STUBBS *v*. PYLE.

Opinion delivered March 3, 1919.

1. MORTGAGES—PLEDGES—NOTICE—BURDEN OF PROOF.—Where an unrecorded contract for the sale of land and notes for a price were assigned by the vendor to plaintiff as collateral security for money borrowed by the vendor, and subsequently the vendee defaulted and surrendered possession of the land to the vendor and gave him a quitclaim deed, and subsequently while in possession the vendor mortgaged the land and then conveyed it in consideration of notes which he pledged as collateral security, the burden is on plaintiff to show that the mortgagee and pledgee had notice or that the circumstances were sufficient to put them on inquiry as to his rights.

2. MORTGAGES—PLEDGE—CHAIN OF TITLE.—The assignee of an unrecorded contract for the sale of land and of the notes for the purchase money is not entitled to priority over a later mortgagee of the vendor and pledgee of notes given by subsequent grantee to the vendor, where the vendor at all times had the record title.

Appeal from Faulkner Chancery Court; *Jordan Sellers*, Chancellor; affirmed.

*P. H. Prince*, for appellant.

1. Stubbs had the superior lien or first lien over all except the Georgia State Saving Association which it is conceded had the first lien. Stubbs holds the second lien or first lien over all except said Georgia State Saving Association. The lien or equity of Stubbs is expressed and appears on the face of the conveyance and was passed to him as assignee under Kirby's Digest, section 510. A quitclaim deed is notice of outstanding claims. 107 Ark. 487. It was error to give Brun and St. Louis Union Bank priority. The bank was not an innocent purchaser, as it had notice. The Central National Bank of St. Louis also took with notice of all outstanding claims. One of the collateral notes was past due and on face of both notes the land was misdescribed. 107 Ark. 487. A purchaser is bound by whatever affects his title which is contained in any instrument through which he traces title, even though not recorded and he has no actual notice of its provisions. 124 Ark. 150; 118 *Id*. 172.

2. Brun took his mortgage subject to the sale by Pyle to M. D. Jones and subject to the six collateral notes in the hands of Stubbs and subject to the quit-claim deed of Jones to Pyle. The three notes of $550 each were overdue and he and the St. Louis Union Bank were not innocent purchasers and took subject to Stubbs' superior lien. *Supra.* Stubbs was not negligent in collecting on the collateral in his hands as is shown by the credits on the notes. Parties selling land and giving bond for title and taking notes, the assignee has the right to a lien for the puchase money against anyone. 27 Ark. 61. Subsequent purchaser is affected with notice of all recitals in the title deed of the vendor, whether recorded or not. 43 Ark. 464. Actual possession of vendee under bond for title is sufficient notice of his title and he is not required to record his bond. 66 *Id.* 167. M. D. Jones was in possession at the time Stubbs took the six notes as collateral. *Bona fide* holder of notes before maturity is protected. Pyle and Jones by trading could not displace and defeat Stubbs' lien under the notes and contract. 124 *Id.* 424-5.

Reconveyance to the vendor does not extinguish the lien in the hands of an innocent purchaser. 115 *Id.* 366. Vendor's lien is a creation of equity and does not exist at law and is enforced by a court of equity as a trust or as an equitable mortgage. 106 Ark. 79. As between persons having only equitable interests, priority in time gives a better equity. Negotiable notes are taken free of all incumbrances. 105 Ark. 201. Stubbs in good faith took the contract of sale and six notes which were not due and negotiable and his lien was fixed then on the land. He was an innocent purchaser and his lien is superior to all except the Georgia State Saving Association. The others are not innocent purchasers. See cases *supra.*

3. The abstract of appellant is a sufficient compliance with rule 9. The contract is set forth and the material evidence fully and fairly stated under the rule of this court. Jones and Pyle make no defense. Brun's mortgage was executed about a year after Stubbs took the six

notes, and he is entitled to the first lien. Authorities *supra*.

R. W. *Robins,* for appellees.

1. Appellant did not comply with rule 9 by making a proper abstract.

Appellant is not an innocent purchaser. He was fully apprised of the contract between Pyle and Jones. The notes were only ordinary promissory notes and really only a part of the contract. He had notice of the conditions in the contract that "time is the essence of the contract," and that in case of default in payment of any of the notes the sale was void, etc. Under the express provisions of the contract the sale became void. 61 Ark. 266-272. Jones elected to refuse to purchase the land and moved off and sold to Durham and put Durham in possession with Stubbs' knowledge. He was not an innocent purchaser and in his hands the notes were not negotiable instruments.

2. Stubbs did not tender or offer to make a deed to the property. 26 Ark. 506; 44 *Id.* 145-150. Pyle could not make a conveyance because he had already with Stubbs' knowledge conveyed to Durham. 44 Ark. 145-150.

3. The St. Louis Union Bank and Central National Bank of St. Louis were innocent and *bona fide* holders of the notes of Durham secured by lien upon the land. At the time they took the notes as collateral security Durham was in possession under a warranty deed from Pyle and there was no record notice of any lien of Stubbs. Nor is there any evidence of any notice whatever. The burden was on appellant to show that said appellees were not *bona fide* and innocent purchasers of the notes and liens. 70 Ark. 256; 84 *Id.* 1; 108 *Id.* 490-496. Neither the contract between Pyle and Jones nor the quitclaim deed from Jones to Pyle was ever recorded. Durham was in possession which was notice of his rights to all the world. 33 Ark. 465; 16 *Id.* 340; 82 *Id.* 455; 101 *Id.* 163.

4. Appellees were not bound to take notice of the contract between Jones and Pyle and of the transfer of

notes by Pyle to Stubbs, as subsequent purchasers are bound to take notice of the recitals of any conveyance through which they deraign title, but Durham to whose rights appellees succeeded did not deraign title through Jones. He obtained title direct from Pyle and neither the contract nor the quitclaim deed was ever recorded and appellees had no actual notice. Neither of the instruments are in Durham's chain of title. Subsequent purchasers are not affected by every conveyance affecting their title, but only those through which they claim title. 69 Ark. 94; 76 *Id.* 525.

5. Kirby's Digest, section 510, does not apply, because the option contract given by Pyle to Jones was not a *"conveyance."* An executor's contract of sale of land is not a conveyance. 73 N. W. 318-19; 45 Minn. 59-62. Pyle's vendor's lien under the contract was personal to him and did not pass to an assignee. 27 Ark. 231.

6. All the evidence is not in the record and it will be presumed that the omitted evidence sustained the decree. 81 Ark. 427; 84 *Id.* 100; 92 *Id.* 622; 98 *Id.* 266; *Lockridge* v. *Stokes,* 133 Ark. 559.

7. A misdescription of a reservation in a conveyance does not avoid or affect the instrument. 9 C. J. 173.

8. Appellant concedes that the Georgia State Bank has a first lien and shows no error of the lower court in its rulings as to the lien of Brun or these appellees, the two banks. See *supra.* The decree is right and should be affirmed.

McCULLOCH, C. J. This controversy involves conflicting claims to priority of liens against a certain lot or tract of real estate in the city of Conway. The real estate was originally owned by appellee, L. H. Pyle, who created the several liens asserted by the respective claimants.

Pyle executed a mortgage to the Georgia State Saving Association, and it is conceded that the lien of that mortgage is superior to all others. On November 1, 1913, which was subsequent to the execution of the mortgage to Georgia State Saving Association, Pyle entered into

a written contract with M. D. Jones for the sale of the property in question for the sum of $1,841.25, payable in six annual installments, evidenced by promissory notes executed by Jones to Pyle. The written contract provided, in substance, that upon the payment of the notes Pyle would execute a deed conveying the said real estate to him, but it was stipulated that the specified time for payment of the notes was to be of the essence of the contract, and that upon default in payment of either of the notes the relation of vendor and vendee should cease and that the relation of landlord and tenant should thereafter subsist between the parties, and that Pyle should have the right to retake possession of the property. Possession was delivered to Jones under the contract, and during his occupancy Pyle borrowed money from appellant Stubbs and assigned to Stubbs as collateral security for the debt the notes of Jones and the contract for the conveyance of the property to Jones. Subsequently Jones defaulted in the payment of the notes and surrendered to Pyle the possession of the real estate in question and executed to Pyle a quitclaim deed. Neither that deed nor the contract between Pyle and Jones was ever placed of record.

Thereafter Pyle, while in possession of the property, executed a mortgage to appellee Caspar Brun to secure a note in the sum of $500, and still later Pyle sold and conveyed said real estate to one Durham, being in possession thereof at the time of the conveyance, and Durham executed to Pyle certain promissory notes covering the unpaid purchase price, and afterwards Pyle assigned the Durham notes to appellees, St. Louis Union Bank, and Central National Bank of St. Louis, as collateral security for indebtedness of Pyle to those institutions, with whom appellant is now contesting for priority.

The chancellor rendered a decree in favor of appellant Stubbs against Pyle for recovery of the debt, but subordinated his lien to the prior claims of Brun, and the Georgia State Saving Association, and St. Louis Union Bank, and Central National Bank of St. Louis.

It is not contended that either Brun, or the Central National Bank of St. Louis, or the St. Louis Union Bank, had actual notice of appellant's asserted lien at the time the liens in favor of those parties were created. On the contrary no proof was introduced at all to establish notice, or the existence of such facts as would put either of those subsequent lienors on inquiry. The burden of proof was on appellant to show that there was notice to those parties, or that the circumstances were such as was sufficient to put them upon inquiry at the time they accepted the liens. *Osceola Land Co.* v. *Chicago Mill & Lumber Co.,* 84 Ark. 1; *White* v. *Moffett,* 108 Ark. 490.

The written evidences of the transactions between Pyle and Jones and between Pyle and appellant were not placed of record, and, although possession had been originally delivered to Jones by Pyle, the former surrendered that possession to the latter, who was in possession at the time of the execution of the mortgage to Brun, as well as at the time he subsequently conveyed the land to Durham.

It is argued that the parties who subsequently dealt with Pyle were chargeable with notice of the transactions between Pyle and Jones for the reason, it is said, that those transactions were within the line of title upon which their liens are based. The argument is not a sound one for the reason that the canceled contract between Pyle and Jones and the unrecorded quitclaim deed from Jones to Pyle were not within the line of title under which appellees asserted their lien. *Case* v. *Caddo River Lumber Co.,* 126 Ark. 240. Pyle had possession and the record title at the time he mortgaged the property to Brun, and at the time he subsequently executed the deed to Durham, and the parties who dealt with him had the right, in the absence of notice to the contrary, to assume that he was the owner. They were not bound to make inquiry concerning the prior possession of Jones under his unrecorded contract. The parties so dealing with Pyle had the right to treat his possession as referable to his record title.

We are of the opinion, therefore, that the chancery court was correct in subordinating the lien of appellant to those asserted by the respective appellees, Georgia State Saving Association, Brun, St. Louis Union Bank, and Central National Bank of St. Louis.

We deem it unnecessary to discuss the additional grounds relied on by appellees in support of the chancellor's decree, that under the peculiar language of the contract between Pyle and Jones converting the relation from one of vendor and vendee to that of landlord and tenant, that the purchaser acquired no vested interest in the land, and that appellant acquired no lien by virtue of the assignment to him of the Jones notes and contract. It is sufficient for the purpose of this case to say that the appellees were innocent holders of the liens without any knowledge whatever of appellant's asserted lien, or, at least, must be deemed innocent purchasers in the absence of proof to the contrary, and are entitled to the protection which they received under the decree of the lower court.

Affirmed.