CASE 43—ACTION TO ENFORCE SPECIFIC PERFORMANCE OF CONTRACT.— JANUARY 30, 1901.

# Bailey and Wife v. Southern Ry. Co. in Kentucky.

### APPEAL FROM SHELBY CIRCUIT COURT.

JUDRMENT FOR DEFENDANT AND PLAINTIFF APPEALS. AFFIRMED.

DEEDS—NOTICE TO PURCHASER—UNRECORDED AGREEMENT REFERRED TO IN DEED—LIABILITY OF CORPORATIONS FOR DEBTS OF VENDOR.

Held: 1. Where a deed to a railroad company of a right of way through the land of the grantors, recited that it was executed in consideration of the fact that the grantee "has located and constructed its line of railroad through the lands of the first parties acording to the agreement entered into October 16, 1882 between the parties hereto," a purchaser from the grantee was not charged with notice of a provision of the unrecorded agreement referred to requiring the grantee to maintain a fence on each side of its right of way, as the purchaser had the right to suppose from the language of the deed that the grantee had fully performed its contract.

2. Under Constitution, section 203, providing that "no corporation shall lease or alienate any franchise, so as to relieve the franchise or property held thereunder from the liability of the lessor or grantor, lessee or grantee, contracted or incurred in the operation, use or enjoyment of such franchise or any of its privileges," the purchaser of the tangible property of a railroad corporation is not charged with the contract duty of the vendor to maintain a fence on each side of its right of way through certain lands, the purchaser having no notice of the contract at the time of his purchase.

G. G. GILBERT, FOR APPELLANTS.

L. C. WILLIS, FOR APPELLEE.

(No briefs in the record.)

This case was not marked "to be reported," and for this reason was omitted in former reports.          REPORTER.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

The Louisville Southern Railway Company, under contract with W. L. Waddy, built its road through Waddy's land in Shelby county, having acquired the title to the right of way under a deed and contract as follows: "Contract: "October 16, 1882. Be it known that I, Wm. L. Waddy, do hereby relinquish the right of way to the Louisville Southern Railroad Co. through my land, extending from the Bagdad and Harrisonville turnpike westward to the lands of L. W. McCormick, upon the condition that said railroad company will maintain a good lawful fence on each side of said right of way, and furnish free transportation to my family and to my sons' families, together with the understanding that said company will locate, erect, and maintain a depot on my lands. It is hereby agreed and understood that I also donate an acre of ground for depot purposes. W. L. Waddy." The deed: "This deed, made this 9th day of December, 1889, by and between W. L. Waddy and his wife, M. L. Waddy, of the

first part, and the Louisville Southern R. R. Co., of the second part, witnesseth, that whereas, the second party has located and constructed its line of railroad through the lands of the first parties, of Shelby county, in the State of Kentucky, according to the agreement entered into October 16, 1882, between the parties hereto, thereupon, in consideration of the premises, and the further consideration of one dollar cash in hand paid, the receipt of which is hereby acknowledged, the parties of the first part grant unto the second party the right of way of said railroad through said lands, which is described as follows," etc. This deed was duly signed and acknowledged and recorded in the proper clerk's office. The contract was not recorded. Subsequent to the date and recording of the deed, the Louisville Southern Railway Company's property, including the right of way above named, was sold under decree of the United States circuit court for the district of Kentucky in foreclosure proceedings, when appellee became the purchaser, being the highest and best bidder at the sale. In April, 1898, appellants, Landon Bailey and wife, as grantees of W. L. Waddy of the tract of land of which this right of way is a part, brought this action against appellee, charging, in the following language, its supposed liability to them, after stating substantially the foregoing facts: "Wherefore the plaintiff prays for a specific performance of said contract, and for a judgment requiring the defendant to execute and carry out said contract, because the plaintiff states that the Southern Railway Company in Kentucky is, and has been ever since August 20, 1894, also a corporation duly created by the laws of this commonwealth, with power and authority to build, lease, purchase, own, and operate said line of railroad, to contract and be contracted with, and to sue

and be sued in its corporate name. And the defendant, ever since August 20, 1894, and by the purchasing of said strip of land and right of way, and in using and operating said line of railroad, has assumed and agreed to keep and perform said covenants and agreements originally under-taken by the Louisville Southern Railway Company." The relief sought by appellants is stated in the prayer of their petition, which is as follows: "The plaintiffs therefore pray that the defendant be required and adjudged to build, maintain, and keep in good repair a good and lawful fence all along the south side of said right of way for the entire distance, for $500 damages already sustained by its fail-ure to do so, and for costs, and for all proper relief." It is not charged that appellee had other notice of the con-tract of October 16, 1882, than is contained in the consid-eration clause of the deed above quoted. It is claimed by appellants that the obligation of the Louisville South-ern Railway Company to maintain the fences named was a covenant running with the land, the benefits of which inured to them as vendees of W. L. Waddy. Proof was taken on the issue made by a traverse of the plaintiffs' petition, which took rather a wider range than was author-ized by the pleadings. On final hearing, the circuit court dismissed appellants' petition, and they have appealed.

We consider that the sole question presented for our re-view is, did the deed of 1889 embrace such statements as in law charged the purchaser (appellee) with notice of the contents of the paper of October 16, 1882? It is well-settled law that a purchaser is charged with notice of whatever appears in his chain of title; for the law presumes that he examined the chain of the title before purchasing it, and, therefore, that he actually saw and took knowledge of every fact shown in that chain. For this same reason,

it appears, if part of the purchaser's chain is unrecorded, he is nevertheless chargeable with notice of the contents of such unrecorded instrument. The fact and extent of this notice are based upon the presumption that one buying property would acquaint himself, as would an ordinarily prudent man, with the facts constituting his vendor's title, so far as the facts may be available to him. This rule, however, does not require him to suspect latent equities, where there is nothing upon the face of the title papers constituting the chain of title under investigation to put an ordinarily prudent person upon inquiry. So in the case at bar we must conclusively presume that appellee, before purchasing, examined the conveyance to its grantor, being the deed of December 9, 1889. The paper of October 16, 1882, was not a part of the chain of appellee's title; but if such reference to it was had in the deed of December 9, 1889, as to have suggested to it, as an ordinarily prudent person to inquire into its contents, it would nevertheless be charged with notice thereof. As to how far a prudent person would have proceeded in his search of collateral facts affecting the title he was purchasing, we should look to the reasons why it was to his interest to inquire. And, as the basis of such reasons, enters the law as it affected the particular matter under inquiry. The law requiring registration of deeds and other muniments of title to land was not enacted for the protection of the title holder or vendor so much as for the protection of the purchaser or vendee. The owner of the title can always protect himself as to reservations, limitations, or purchase-money liens, by clear, specific statements incorporated in the instrument he is executing. If he intends to reserve to himself, as against subsequent vendees, any right to or easement in or lien upon the property

he is conveying, he owes it to such subsequent vendee
to notify him of the fact. As between him and his immedi-
ate vendee, it is, of course, unnecessary to record any
such notice. As between themselves, their exact agree-
ment, so far as it was lawful, would be enforced without
its being recorded. Therefore, in order to protect pur-
chasers, the lawmaking power of·this State has enacted
(section 2358, Kentucky Statutes), "When any real estate
shall be conveyed, and the consideration or any part there-
of, remains unpaid, the grantor shall not have a lien for
the same against *bona fide* creditors and purchasers, unless
it is stated in the deed what part of the consideration re-
mains unpaid." But the vendor, Waddy, may have pro-
tected himself against subsequent vendees notwithstand-
ing the omission from his deed of the terms of the con-
tract of October 16, 1882, by recording in the Shelby coun-
ty court clerk's office that contract before his vendee had
parted with the title and possession of the right of way.
Section 500, Kentucky Statutes, is as follows: "Any con-
tract for the sale of land, or any interest therein, when
acknowledged or proven as deeds are required to be, may
be recorded in the county in which such lands are situ-
ated, in the same offices and books in which deeds are
recorded, and the record of all contracts recorded shall,
from the time of lodging same for record, be notice of such
to all persons." In the light of the foregoing statutes
and policy of the law, which we must assume the purchaser
had in mind in examining the title to this property when
purchasing it, what was a reasonable construction on his
part of the language of the deed of December 9th rela-
tive to this contract? The language is that, in consid-
eration of the fact that the grantee "has located and con-
structed" its railway through the grantee's lands "accord-

ing to its contract" of a certain date, and of one dollar paid in hand, the natural and not unreasonable inference would be that everything that the grantee was required by such contract to do was executed and accepted. This interpretation was justifiable alike by the form of expression used,—the past participle being employed,—as well as by the failure to suggest any unpaid purchase money or unperformed obligation imposed by the contract upon the grantee. And the purchaser further had the right to, and, we may presume, did, employ the rule of construction that the courts use in such cases, and that is that deeds and like instruments are construed most strongly against the grantor. Our system of registration of muniments of land titles is so effective, so simple, so well understood, and so generally employed, that we are disinclined to favor those latent equities founded on the neglect of plain, well-known statutory privileges, as against purchasers for value without notice. And, as to this notice, we rather incline to the view that when the purchaser has inspected the records where evidence of title and liens should be recorded, and finds nothing there certainly informing him of the outstanding equity, his vendor being in possession, he should be protected. Judgment affirmed.

Response by Judge O'Rear to petition for rehearing:

Per Curiam.—Appellant complains that we did not notice in the opinion the provision of section 203 of the Constitution. The section was considered, but deemed not to be applicable. The section is as follows: "No corporation shall lease or alienate any franchise so as to relieve the franchise or property held thereunder from the liability of the lessor or grantor, lessee or grantee, contracted or incurred in the operation, use or enjoyment of such franchise

or any of its privileges." The word "franchise" as here. used, is the corporate existence or charter privileges as distinguished from the corporeal property of the corporation. The words, "or property held thereunder," have reference to such public duty, obligations or servitude as may be imposed by virtue of the "franchise" on the tangible property of the corporation. The construction asked for by appellant would deny the doctrines of estoppel, notice, and other similar defenses erected upon considerations of public policy and common honesty, when urged in behalf of a corporation in such transactions as in this case. Such could not have been the intention of the framers of the Constitution in the preparation of an instrument which they supposed should, and believed did, provide for "equal rights to all, exclusive privileges to none."

Petition overruled.