THE EBLING BREWING COMPANY, Appellant, *v.* EUGENIA GENNARO and Others, Defendants, Impleaded with ISABELLA DENNISON, Respondent.

Second Department, December 12, 1919.

Mortgage — validity of subsequent mortgage recorded before prior mortgage — good faith of subsequent mortgagee — constructive notice — necessity for mortgagee to search title and demand production of title deeds — English doctrine as to creation of equitable mortgage by deposit of title deeds — equitable lien — application of recording law to purchase-money mortgage.

By virtue of section 291 of the Real Property Law a mortgage given for a valuable consideration subsequent to but recorded prior to a purchase-money mortgage is a prior lien provided the subsequent mortgagee took his mortgage in good faith.

A subsequent mortgagee whose mortgage is first recorded is an incumbrancer in good faith and is not chargeable with constructive notice of the recitals in an unrecorded deed in the chain of his title, although he does not search the records and call for the production of the said deed which would have disclosed the existence of a prior mortgage.

*It seems,* that the English doctrine that an equitable mortgage is created by merely making a deposit of title deeds against advances, without words passing, does not obtain in this State.

The English rule that a purchaser who does not call for the title deeds acts in bad faith does not obtain here because the reason for it does not exist.

*It seems,* that the absence of title deeds does not suggest the existence of an equitable lien, although such lien may be created by agreement.

The fact that an unrecorded mortgage is a purchase-money mortgage does not change the rule as to the validity of a subsequent mortgage, first recorded, for a purchase-money mortgage is as much subject to the Recording Act as any other.

A subsequent mortgagee is not guilty of bad faith by a failure to employ a lawyer to examine the title to the real property prior to the taking of his mortgage, but he may rely upon the record as to the existence of any prior mortgages, and, if there was nothing to suggest that there was any incumbrance on the property, he cannot be said to have willfully foreborne to make inquiry.

PUTNAM and KELLY, JJ., dissented, with opinions.

APPEAL by the plaintiff, The Ebling Brewing Company, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Westchester on the 28th day of November, 1917, upon the

decision of the court after a trial at the Westchester Special Term dismissing the complaint against the defendant Isabella Dennison.

This action was to foreclose a mortgage for $1,500 given by Eugenia Gennaro to the plaintiff on the 15th of January, 1912, and recorded on the nineteenth of January in that year. On the 14th of July, 1911, Robert Dennison and his wife conveyed the property in question to Augusto E. Gennaro, who gave back a purchase-money mortgage for $1,000 to the defendant Dennison. On the same day Augusto E. Gennaro conveyed the premises to Eugenia Gennaro. The deed from the Dennisons to Augusto E. Gennaro, and the purchase-money mortgage given back to the Dennisons, and the deed from Augusto E. Gennaro to Eugenia Gennaro, were not recorded until the 23d of January, 1912, which was subsequent to the date of record of plaintiff's mortgage. The court decided that plaintiff had constructive notice of the contents of the unrecorded deed in its own chain of title, which recited the unrecorded mortgage, and, therefore, was not a mortgagee in good faith and not protected by the Recording Act, and that plaintiff's mortgage was subject to the lien of the unrecorded purchase-money mortgage held by defendant Dennison. From this decision the plaintiff appeals.

*Bernstein & Quinn*, for the appellant.

*James Dempsey*, for the respondent.

BLACKMAR, J.:

The question presented on this appeal is whether a purchaser or mortgagee of real property for a valuable consideration is chargeable with constructive notice of the recitals of an unrecorded deed in the chain of his title. Defendants Dennison had a purchase-money mortgage prior in point of time to that of the plaintiff; but plaintiff's mortgage was first recorded. By virtue of the Recording Act (Real Prop. Law, § 291) plaintiff's mortgage is a prior lien provided that plaintiff is a mortgagee in good faith. If plaintiff had notice, actual or constructive, of the prior unrecorded mortgage, it amounted to a fraud to attempt to supplant it. In the language of some

of the older decisions, good faith required it to stay its hand. Plaintiff had no actual notice; but the court has found that it had constructive notice and, therefore, did not take its mortgage in good faith and is not entitled to the protection of the Recording Act.

Not only was the purchase-money mortgage to defendant Dennison unrecorded, but the conveyance to plaintiff's mortgagor was also unrecorded. The conveyance contained a recital that it was subject to a purchase-money mortgage. If the conveyance had been recorded, plaintiff would, therefore, have had constructive notice of the recital and consequently that it was subject to a purchase-money mortgage for $1,000. This notice would have placed on plaintiff the duty of investigating and would have led to defendant Dennison's mortgage. Plaintiff then could not have proceeded in good faith to take his mortgage to the detriment of defendant Dennison and the Recording Act would have afforded it no protection.

But the conveyance was not on record and the learned court has decided that plaintiff was not an incumbrancer in good faith because it did not search the record and call for the production of the unrecorded deeds, the reason necessarily being that good faith required it to search the record, and that when it was disclosed by the search that there was no record title in the mortgagor, good faith required it to go further and call for the physical production of the title deeds, and that the failure so to do charged it with constructive notice of the recital in the unrecorded deed. I think this is a strange and dangerous doctrine as conveyancing is carried on in this State, and that it rests on no sufficient authority.

It is suggested that certain decisions in England to the effect that a failure on the part of a purchaser or mortgagee to call for the title deeds is evidence that the purchase or mortgage is not in good faith, lend support to this doctrine. (See *Worthington* v. *Morgan*, 16 Simon, 547; *Whitbread* v. *Jordan*, 1 Younge & Co. [Exch.] 303; *Le Neve* v. *Le Neve*, 2 Wh. & Tud. Lead. Cas. 27, 48, n; *Finch* v. *Shaw*, 19 Beav. 500; *Jones* v. *Williams*, 24 id. 47; *Hewitt* v. *Loosemore*, 9 Hare, 449.) These cases hold that a purchaser who does not call for the title deeds is chargeable with notice of an equi-

table mortgage created by the deposit of title deeds. In England the mere deposit of title deeds against an advance creates an equitable mortgage. (*Lloyd's Banking Co.* v. *Jones*, L. R. 29 Ch. Div. 221; *Matter of Morgan*, 18 id. 93; *Ex Parte Coming*, 9 Ves. Jr. 115; *Ex Parte Langston*, 17 id. 227, where it is said by Lord ELDON that " a mere deposit of title-deeds upon an advance of money, without a word passing, gives an equitable lien.") In *Ex Parte Kensington* (2 Ves. & B. 79) Lord ELDON disapproves but accepts the doctrine as established by authority. Under this doctrine if the title deeds are not in the possession of the grantor it suggests that the possessor other than the grantor may hold them for an equitable lien, and it follows that a purchaser or a mortgagee is chargeable with knowledge of a lien that is suggested by their absence. Upon this doctrine rests the rule that a purchaser must call for the title deeds. But I think that the doctrine with its necessary corollary does not obtain in the State of New York.

The text writers state that the doctrine of equitable mortgage by deposit of title deeds is not usually accepted in the United States. Among the States that reject the doctrine New York is not named, apparently on account of *Rockwell* v. *Hobby* 2 Sandf. Ch. 10). That case cannot be held to be authority that the doctrine is adopted in this State. The case was considered in *Bowers* v. *Johnson* (49 N. Y. 432), and, it seems to me, disapproved. In *Stoddard* v. *Hart* (23 N. Y. 556) COMSTOCK, Ch. J., said: " In this State the doctrine is almost unknown, because we have no practice of creating liens in this manner." I think it may be said with accuracy that the doctrine is entirely unknown in this State. Every day titles are passed on the evidence furnished by the records, and rarely if ever are title deeds called for. The time has come, I think, definitely to state that the English doctrine that an equitable mortgage is created by merely a deposit of title deeds against advances without words passing does not obtain in this State. The English rule that a purchaser who does not call for the title deeds acts in bad faith does not obtain here because the reason for it does not exist. To avoid misunderstanding, it is well to state that the doctrine that

an equitable lien may be created by agreement is unquestioned (*Hamilton Trust Co.* v. *Clemes*, 163 N. Y. 423; *Chase* v. *Peck*, 21 id. 581), but that the absence of title deeds does not suggest the existence of such a lien.

The rule regarding the purchase or payment of a bond and mortgage without requiring that the original be produced (*Assets Realization Co.* v. *Clark*, 205 N. Y. 105; *Kellogg* v. *Smith*, 26 id. 18) is akin to the English rule regarding the purchase of land. As in England an equitable lien may be created by a deposit of title deeds against advances, so in New York State a bond and mortgage, which is personal property, may be assigned by delivery without a written instrument. The only safeguard against such an assignment is to require the production of the bond itself. This doctrine, therefore, has no application to land, which cannot under the statutes be so conveyed.

Reference is made to a rule stated in 39 Cyc. 1715, as follows: "A purchaser is affected with notice of the recitals in the instruments forming his chain of title and material thereto, whether recorded or not." But in the authority from this State given as sustaining this rule (*Sweet* v. *Henry*, 175 N. Y. 268) the instruments containing the recitals were recorded, and it was the instruments recited that were not recorded. It is not doubted that a purchaser has constructive knowledge of the recitals of a recorded deed, and, therefore, of the instrument so recited; but that rule has no application to the case at bar.

The fact that the unrecorded mortgage was a purchase-money mortgage does not affect the problem. A purchase-money mortgage is as much subject to the Recording Act as any other. The case of *Dusenbury* v. *Hulbert* (59 N. Y. 541) is not to the contrary. The decision in that case was that the unrecorded purchase-money mortgage was entitled to priority over the mortgage first recorded because the mortgagee of the mortgage first recorded was not, under the Recording Act, a purchaser for a valuable consideration, as the mortgage was given to secure an antecedent debt. The discussion in the *Dusenbury* case regarding the status of a purchase-money mortgage has no reference to the effect of the Recording Act, but to the question of priority of right between a purchase-

money mortgage and another which took effect concurrently therewith and which the mortgagor agreed should be a first lien. It was held that the purchase-money mortgage representing the vendor's lien was necessarily prior to any other mortgage placed on the property by the vendee, for there never had been an instant when the vendee had a title free from the lien of the purchase-money mortgage. Such priority may be displaced by the Recording Act, and when the effect of the Recording Act was considered the purchase-money mortgage was given priority only because the other mortgage, first recorded, was not given for a valuable consideration and, therefore, was not within the statute.

The object of this unduly long analysis of cases is only to clear the ground so that we may not be misled by false analogies. Section 291 of the Real Property Law provides: "A conveyance of real property, within the State, on being duly acknowledged by the person executing the same, or proved as required by this chapter, and such acknowledgment or proof duly certified when required by this chapter, may be recorded in the office of the clerk of the county where such real property is situated, and such county clerk shall, upon the request of any party, on tender of the lawful fees therefor, record the same in his said office. Every such conveyance not so recorded is void as against any subsequent purchaser in good faith and for a valuable consideration, from the same vendor, his heirs or devisees, of the same real property or any portion thereof, whose conveyance is first duly recorded."

The plaintiff was a purchaser for a valuable consideration. Its mortgage was first duly recorded. The prior unrecorded purchase-money mortgage was void as to it, provided only that it was a purchaser in good faith. If it had actual or constructive notice of the prior mortgage it was not a purchaser in good faith. It had no actual notice. It had no constructive notice of a duly recorded instrument. It seems to me that the respondent's proposition comes down to this: that one who takes a mortgage of real property acts in bad faith if he does not employ a lawyer or a title company to examine the title, and if a deed in the chain of title be missing, require its production. I do not know of any authority for that proposition or of any principle which supports it. If a

EBLING BREWING CO. *v.* GENNARO.

Second Department, December, 1919.        [Vol. 189·

purchaser omits such an examination he has notice of instruments duly recorded, but, I think, of nothing else. Even if the instrument affecting the title was not legally recorded although actually transcribed on the records, he has not constructive notice of it (*Bradley* v. *Walker*, 138 N. Y. 291); but to sustain this judgment it must be held that plaintiff has knowledge of the contents of an instrument not recorded at all and that because it is not recorded. The evidence is that Gennaro told the plaintiff's representatives that the mortgage was a first lien. What duty did plaintiff violate in relying on the representation, and to whom did he owe any such duty? It is written in *Jones* v. *Smith* (1 Hare, 43) that " The doctrine of constructive notice applies in two cases; first, where the party charged has notice that the property in dispute is encumbered, or in some way affected, in which case he is deemed to have notice of the facts and instruments, to a knowledge whereof he would have been led by due inquiry after the fact which he actually knew; and, secondly where the conduct of the party charged evinces that he had a suspicion of the truth, and wilfully or fraudulently determined to avoid receiving actual notice of it."

If this be a correct statement of the law, and I think it is, plaintiff had no constructive notice. There was nothing to suggest to it that there was any incumbrance on the property, so it cannot be said to have willfully forborne to make inquiry. In *Acer* v. *Westcott* (46 N. Y. 384) Judge PECKHAM said: " Constructive notice may be said to be a knowledge by the purchaser of some facts which should put him upon inquiry, and require him to examine other matters that would generally unfold the true title." And quoting from the lord chancellor in *Ware* v. *Egmont* (4 DeG., M. & G. 460, 473), he said: " ' I must not part with this case without expressing my entire concurrence in what has, on many occasions of late years, fallen from judges of great eminence on the subject of constructive notice, namely, that it is highly inexpedient for courts of equity to extend the doctrine.' " Judge PECKHAM also said: " The purchaser must be presumed to investigate the title, and to examine every deed or instrument forming a part of it, especially if recorded." The last three words, " especially if recorded," limit the general statement.

The plaintiff had no constructive notice under the Recording Act, for by that it is chargeable only with knowledge of the instruments legally recorded. It had no actual knowledge of any fact which would suggest that there was a purchase-money mortgage extant. There was no possession which indicated any outstanding right. The plaintiff, therefore, acted in good faith and is protected by the Recording Act. The conclusion of law of the learned court, expressed in the fourteenth finding of fact, that the plaintiff had constructive knowledge of the prior unrecorded mortgage, is, therefore, not supported by the findings of fact, and the judgment must be reversed.

I think, however, that a new trial should be directed, as the evidence indicates that there may be questions of fact which should be passed upon directly, viz., whether the deed from Augusto Gennaro to his wife, through which plaintiff takes title, was delivered, and whether the plaintiff's agent, who acted in accepting the mortgage, had such knowledge of the unrecorded mortgage as is imputable to plaintiff.

I recommend that the judgment be reversed and a new trial granted, with costs to abide the final award of costs.

JENKS, P. J., and JAYCOX, J., concurred; PUTNAM, J., read for affirmance, with whom KELLY, J., concurred, and with a separate memorandum.

PUTNAM, J. (dissenting):

This situation arises from a mortgage loan to Mrs. Gennaro (wife of a retailer of plaintiff's beer in casks and kegs), made by the plaintiff brewing company on January 15, 1912. She had no record title. That still remained in the Dennisons. Mrs. Gennaro had no possession of the property. But at this time there was an unrecorded deed to her from her husband, contained in his desk, dated July 14, 1911, purporting to be in consideration of one dollar, which recited an incumbrance by mortgage to secure $1,000, which the party of the second part assumed and agreed to pay.

In closing these transactions Mr. Bushnell of Peekskill, now deceased, acted as attorney for the Gennaros, also for the plaintiff. The plaintiff had written to Bushnell about

Second Department, December, 1919. [Vol. 189.

this loan, and Bushnell answered that he would take care of it. Bushnell took the wife's acknowledgment and then sent the bond and mortgage to the brewing company, which itself sent the mortgage for record and paid the recording charges.

The court has found: " That plaintiff made no inquiry as to the nature and extent of the title or interest in the said premises of the said defendant, Eugenia Gennaro."

Of course, this was the only way such a mortgage as plaintiff's could be taken as a first lien, since inspection of the deed to Mrs. Gennaro would disclose the prior $1,000 mortgage to the Dennisons.

It is settled in New York that a junior incumbrancer who first gets on record is not protected by the Recording Act if the mortgagee had constructive notice of a prior unrecorded instrument. (*Tuttle* v. *Jackson*, 6 Wend. 213; *Jackson* v. *Burgott*, 10 Johns. 457.)

The Recording Acts protect only one who is a purchaser in good faith. Such a purchaser or mortgagee, chargeable with notice of the rights of a prior purchaser or incumbrancer, is not acting in good faith. The degree of notice required is, in the language of the authorities, such as would lead any honest man, using ordinary caution, to make further inquiries. (*Moore* v. *Le Maire*, 169 App. Div. 154, 157.)

As was said by DUER, J.: " The principle of the doctrine of constructive notice is, that when a person is about to perform an act by which he has reason to believe that the rights of a third party may be affected, an inquiry into the facts is a moral duty, and diligence an act of justice. Hence, he proceeds at his peril when he omits to inquire, and is then chargeable with a knowledge of all the facts that by a proper inquiry he might have ascertained. This neglect is followed by all the consequences of bad faith, and he loses the protection to which his ignorance, had it not proceeded from neglect, would have entitled him. The cases are innumerable in which this doctrine has been applied in courts of equity to purchasers and mortgagees of real estate, and there are many in which it has operated to divest the title of those whose actual good faith was unsuspected. The rule, that it is only purchasers for value and without notice, who, in certain cases, may oppose their title to that of the true owner, we have always believed

and must still believe, is the same in courts of law as of equity, and in both, we cannot doubt that the term notice must receive the same interpretation. It must either be limited to strict knowledge, which is derived from positive information, or must be extended to that which the law imputes to him, who, having reason to believe or suspect, refuses or neglects to inquire." (*Pringle* v. *Phillips*, 7 N. Y. Super. Ct. 157, 171.)

I think the finding of no inquiry as to the nature and extent of this mortgagor's title is decisive. Obviously the brewing company took this mortgage either relying on the credit of a favored customer, the mortgagor's husband, or else it willfully shut its eyes, and did not call for the title deed. In either view it was not a *bona fide* purchaser, and, therefore, not under the protection of the Recording Acts. (39 Cyc. 1715; 2 Devlin Deeds [3d ed.], § 629a.) If it be asked what any honest man, using ordinary caution, would ask for in taking a mortgage from a holder of an unrecorded deed, or what in these circumstances would be a proper inquiry, I think no real question should arise. In such case, before consummating the transaction, the deed constituting the basis of the title would be ordinarily called for and inspected.

Hence I would affirm.

KELLY, J., concurred.

KELLY, J.:

I concur with PUTNAM, J., and I also think that the evidence shows that Bushnell was more than an attorney employed to draw the papers for the plaintiff. I think he represented plaintiff generally, and the proof shows that Bushnell actually prepared the purchase-money mortgage held by Dennison.

Judgment reversed and new trial granted, with costs to abide the final award of costs.