**J. H. PAGE, Jr., Petitioner,**

**v.**

**FEES–KREY, INC., a Colorado Corporation, Monarch Enterprises, Inc., a Colorado Corporation, Walter S. Fees, Jr., Max Krey, Robert S. Hawkins, and William Rippy, Respondents.**

**No. 79SC45.**

Supreme Court of Colorado,
En Banc.

Oct. 6, 1980.

Rehearing Denied Nov. 3, 1980.

---

**9.** Webster's Seventh New Collegiate Dictionary gives the following definition: "1: an unforeseen combination of circumstances or the resulting state that calls for immediate action 2: a pressing need: EXIGENCY"

**10.** In the instant case the defendant requested a jury determination and the prosecution did not object. Although the term "emergency" was not defined for the jury, the record does

not reflect that the defendant objected or tendered any proposed instruction defining the term.

**11.** Because the People had the burden of proving every element of the offense beyond a reasonable doubt, the jury may well have placed that same burden on the defendant to prove emergency.

Paul C. Lennartz, Samuel L. McClaren, Denver, for petitioner.

Dufford, Waldeck & Williams, Hugh D. Wise, Grand Junction, for respondents.

LOHR, Justice.

We granted certiorari to review a decision of the court of appeals [1] which reversed a judgment of the district court that J. H. Page, Jr. (Page, Jr.), is the owner of a two percent overriding royalty interest in a federal oil and gas lease. We reverse the decision of the court of appeals.

The material facts are not in dispute. In 1951 the United States, as lessor, entered into an oil and gas lease with Marie Maroney, as lessee, covering certain real property in Rio Blanco County, Colorado.

In 1955 Phillips Petroleum Company (Phillips) acquired all of the lessee's interest in the lease. In February and March 1960 Phillips transferred [2] to Page, Jr., an undivided one–half interest in the working and operating rights as to certain horizons and substances [3] under a portion of the leased lands. In April 1960 Page, Jr., assigned the interest acquired from Phillips to J. H. Page, Sr. (Page, Sr.), reserving a two percent overriding royalty interest. It is this reserved interest which is the subject of this case.

In May 1960 Page, Sr., assigned an undivided one–fourth of his interest to H. K. Beardmore, Jr. (Beardmore), expressly subject to Page, Jr.'s overriding royalty interest.

In July 1966 Phillips assigned its other undivided one–half interest in the lease to Shawnee Oil Development Co., Inc. (Shawnee). In August 1966 Page, Sr., and Beardmore assigned their undivided one–half interest in the lease to Shawnee, subject to

---

1. *Fees–Krey, Inc. v. Page*, Colo.App., 591 P.2d 1339 (1978).

2. As will be discussed in Part V, there is a question whether this transfer was a sublease or an assignment.

3. The transfer covered working and operating rights under the lease insofar as it pertains to all oil, gas, and casinghead gas from the surface of the ground down to the base of the Emery Sands underlying designated leased lands.

"any and all outstanding overriding royalties or other burdens on production, which shall be assumed by Shawnee"; that assignment does not refer specifically to Page, Jr.'s two percent overriding royalty.

Thereafter, Shawnee assigned the lease to Fees–Krey, Inc. (Fees). Although other transfers were made, they do not enter into the dispute between the parties and are not referred to in this opinion.[4]

Except for the lease from the United States to Marie Maroney, none of the material documents were recorded in the office of the County Clerk and Recorder of Rio Blanco County, Colorado (county records). However, all of those documents were filed in the office of the United States Department of the Interior, Bureau of Land Management, in Denver, Colorado (BLM records).

In 1972 Page, Jr., learned of production under the lease and demanded payment based upon his two percent overriding royalty. Fees refused to recognize Page, Jr.'s claim, and instead filed a quiet title action against Page, Jr., seeking a decree quieting title in Fees free from Page, Jr.'s two percent overriding royalty. Page, Jr., counterclaimed, seeking to quiet title in himself to the two percent overriding royalty.

The trial court found that neither Shawnee nor Fees had actual or constructive notice of Page, Jr.'s overriding royalty at the time each acquired its respective interest, and that Page, Jr., had not abandoned the overriding royalty but had demanded payment soon after learning of production. The trial court concluded that the Colorado recording act, section 38–35–109, C.R.S. 1973,[5] is a "race–notice" statute. The court reasoned that, as Fees had not recorded its assignment in the county records before receiving notice of Page, Jr.'s claim, Fees took its interest subject to Page, Jr.'s two percent overriding royalty interest. Fees appealed.

The court of appeals concluded that the Colorado recording act is a "pure notice"

statute and that, therefore, Fees, having purchased without actual notice of Page, Jr.'s overriding royalty, should prevail. The court of appeals also rejected Page, Jr.'s argument that the filing of the material documents in the BLM records gave constructive notice to Fees of the overriding royalty.

Four principal questions are presented for our consideration in reviewing the decision of the court of appeals:

1. Is Fees charged with notice of, and bound by, the reservation of the two percent overriding royalty in an instrument in its chain of title even though that instrument was not recorded in the county records?

2. Did Fees acquire the lease free from the burden of the overriding royalty of Page, Jr., by operation of the Colorado recording act?

3. Is Fees charged with notice of, and bound by, the documents filed in the records of the Bureau of Land Management?

4. Was the two percent overriding royalty interest extinguished by merger when Shawnee acquired all other interests in the lease?

The first three questions are interrelated.

■ The parties also have vigorously disputed whether the Colorado recording act is a "race–notice" or a "pure notice" statute. Although our resolution of the other issues makes it unnecessary to reach that question, we conclude that the dissenting opinion correctly analyzes and answers it.

I.

■ The law is well settled that, unless otherwise provided by statute, a purchaser is bound by recitals in conveyances or other instruments of transfer in his chain of title. *See* 8 C. Thompson, *Commentaries on the Law of Real Property* § 4310 (1963 Repl. Vol.) [hereinafter cited as *Thompson*]; 2 R. Patton & C. Patton, *Patton on Land Titles* § 604 (1957) [hereinafter cited as *Patton*]. This rule applies even when the instrument

4. A simplified diagram of the relevant transfers is attached as Appendix A.

5. Currently codified as section 38–35–109(1), C.R.S.1973 (1979 Supp.).

containing the recitals is not recorded. *Carter v. Thompson*, 167 Ark. 272, 267 S.W. 790 (1925); *Green v. Maddox*, 97 Ark. 397, 134 S.W. 931 (1911); *Baker v. Mather*, 25 Mich. 51, 53 (1872); *Stees v. Kranz*, 32 Minn. 313, 20 N.W. 241 (1884); *Runge v. Gilbrough*, Tex.Civ.App., 87 S.W. 832 (1905); see *Elk Horn Bank & Trust Co. v. Spraggins*, 182 Ark. 27, 30 S.W.2d 858 (1930); *Bailey v. Southern Ry. Co.*, 112 Ky. 424, 60 S.W. 631 (1901); *Savings, Building & Loan Association v. McClain*, 18 Tenn.App. 292, 76 S.W.2d 650 (1934); *Steed v. Crossland*, 252 S.W.2d 784 (Tex.Civ.App.1952); 2 J. Pomeroy, *A Treatise on Equity Jurisprudence* §§ 626, 628 (1941); 8 *Thompson* § 4310; 5 H. Tiffany, *The Law of Real Property* § 1293 (1939); 77 Am.Jur.2d, *Vendor and Purchaser* § 667, 92 C.J.S., *Vendor and Purchaser* § 331; *contra, Ebling Brewing Co. v. Gennaro*, 189 App.Div. 782, 179 N.Y.S. 384 (1919).

In *Green v. Maddox, supra*, the rule is stated as follows:

"As is said in the case of *Stees v. Kranz*, 32 Minn. 313 [, 20 N.W. 241]: 'No rule is better settled than this, that one is bound by whatever, affecting his title, is contained in any instrument through which he must trace title, even though it be not recorded, and he have no actual notice of its provisions.' Every purchaser who holds under a conveyance through which he must trace his title is bound by whatever is contained in it. It is his imperative duty to obtain and examine all the instruments which constitute essential links in his chain of title, and he is conclusively presumed to know all the recitals and matters contained therein affecting the title or the estate, whether they are recorded or not. 2 *Devlin on Deeds*, § 1001; 2 Pomeroy, *Eq.Jur.*, § 626; *Blake*

v. *Tucker*, 12 Vt. 39; *Robbins v. McMillan*, 26 Miss. 434."

97 Ark. at 403, 134 S.W. at 933.

The rule has been narrowed in Colorado by a curative statute. The statute provides that, where a recorded instrument affecting title to real property contains a recital referring to an unrecorded instrument purportedly affecting that title, that reference does not bind anyone other than the parties to the recorded instrument and does not place any other persons on inquiry. Section 38–35–108, C.R.S.1973.[6] *See Rocky Mountain Fuel Co. v. Clayton Coal Co.*, 110 Colo. 334, 134 P.2d 1062 (1943). The general rule, and not the statutory exception, applies in the present case for two reasons. First, the assignment in which the overriding royalty interest was reserved was not recorded, so the curative statute is not applicable by its own terms. Even more importantly, the language in the transfer by Page, Jr., to Page, Sr., Fees' remote transferor, is more than a mere recital referring to some other instrument by which Page, Jr.'s overriding royalty interest was created; it is the operative language by which the overriding royalty interest was created by reservation. Fees is bound by that reservation. *See* 8 *Thompson* § 4310 and other authorities cited above.

II.

This result is not inconsistent with the policies underlying the recording acts. At common law, as between two legal interests such as the working interest of Fees and the overriding royalty interest of Page, Jr., the first in time was first in right. A grantor could transfer no more than he owned. *See* 8 *Thompson* § 4290; Aigler, *The Operation of the Recording Acts*, 22 Mich.L.Rev. 405 (1924). Recording acts

---

**6.** The curative statute provides:

"*38–35–108. Reference to some other instrument affects only the parties thereto.* When a deed or any other instrument in writing affecting title to real property has been recorded and such deed or other instrument contains a recitation of or reference to some other instrument purporting to affect title to said real property, such recitation or reference

shall bind only the parties to the instrument and shall not be notice to any other person whatsoever unless the instrument mentioned or referred to in the recital is of record in the county where the real property is situated. Unless the same is so recorded, no person other than the parties to the instrument shall be required to make any inquiry or investigation concerning such recitation or reference."

have been enacted in response to a need to provide protection for purchasers of real property against the risk of prior secret conveyances by the seller. *See* 8 *Thompson* § 4290; Storke & Sears, *The Perennial Problem of Security Priority and Recordation*, 24 Rocky Mtn.L.Rev. 180, 188 (1952). Very generally, they permit a purchaser to rely on the condition of title as it appears of record. *See* 8 *Thompson* § 4291. They also promote creation of an accessible history of title.[7]

In the present case there was no apparent record chain of title in Shawnee, Fees' immediate assignor. The only relevant instrument of record in Rio Blanco County was the lease from the United States to Marie Maroney. Not even the assignments to Shawnee, the immediate assignor of Fees, were of record. Fees could not have relied on the condition of record title in acquiring its interest.[8] The policy that a purchaser should be able to rely on the condition of title as it appears of record is not violated by holding Fees' interest to be subject to the overriding royalty interest of Page, Jr.

The policy of encouraging prompt recordation was violated by both Page, Jr., and Page, Sr., Fees' remote assignor, so that factor does not aid Fees in resolution of the present dispute.[9]

Most of those authorities cited in Part I above which state the principle that a purchaser is bound by recitals in unrecorded conveyances in his chain of title do so in a context which assumes existence of a recording act. *See* 2 J. Pomeroy, *A Treatise on Equity Jurisprudence* §§ 626, 628 (1941); 8 *Thompson* § 4310; 5 H. Tiffany, *The Law of Real Property*, § 1293 (1939).

III.

▮▮▮ No different result is required by the language of the Colorado recording act. Section 38–35–109, C.R.S.1973, states:

"All deeds, powers of attorney, agreements, or other instruments in writing conveying, encumbering, or affecting the title to real property, . . . may be recorded in the office of the county clerk and recorder of the county where such real property is situated and no such instrument or document shall be valid as against any class of persons with any

---

**7.** Patton summarizes the purposes of the recording acts as follows:

"Their [recording acts'] object has been variously stated as being the original one of securing a prompt recordation of all conveyances by according priority of right to the purchaser who is first to record his conveyance, the equitable one of protecting subsequent purchasers against secret and unknown conveyances and agreements by reason of which they would otherwise be prejudiced, and the constructive one of preserving an accessible history of each title, so that anyone needing the information may reliably ascertain in whom the title is vested and the encumbrances against it."

1 *Patton* § 6 at p. 15. Recording acts are of three basic types, reflecting different emphasis among the purposes which Patton describes: Race (giving priority to the first transferee to record), notice (giving priority to the transferee who acquires an interest without notice of a prior transfer), and race–notice (giving priority to the transferee who acquires an interest without notice of a prior transfer only if that subsequent transferee is first to record). *See* 1 *Patton* § 7.

**8.** Even if the transfer by which Page, Jr., reserved the overriding royalty interest had been recorded in the county records, a traditional title search would not have disclosed it. Real estate records in Colorado are indexed by grantor and grantee, pursuant to statute. Section 30–10–411, C.R.S.1973 (now in 1977 Repl. Vol. 12). *Fees* would start its search for prior transfers by searching the grantee index under the name of Shawnee in an effort to find the transfer by which Shawnee acquired its interest. That transfer was not recorded, so Fees would have had no means of searching further up the chain for earlier transfers. *See* Storke & Sears, *The Perennial Problem of Security Priority and Recordation*, 24 Rocky Mtn.L.Rev. 180 (1952). *But see Treat v. McDonough*, 148 Colo. 603, 367 P.2d 587 (1961). (If a county clerk and recorder maintains a tract index for his own purposes, it is a public record. Tract indices index documents by the parcel of land affected.) There was no evidence that a tract index was maintained in Rio Blanco County.

**9.** Fees' remote assignor, Page, Sr., would have obtained possession of the instrument by which the overriding royalty was reserved to Page, Jr. The delinquency in failure to record would seem to be attributable more to Page, Sr., than to Page, Jr.

kind of rights, except between the parties thereto and such as have notice thereof, until the same is deposited with such county clerk and recorder...."

Fees must assert that the instrument reserving the overriding royalty interest to Page, Jr., is valid, for it is an essential link in Fees' chain of title. An overriding royalty carved out of the working interest in an oil and gas lease is an interest in real property. *Hagood v. Heckers*, 182 Colo. 337, 513 P.2d 208 (1973); *Globe Drilling Co. v. Cramer*, 39 Colo.App. 153, 562 P.2d 762 (1977). Thus, the recording act applies to an instrument creating such an interest. The recording act speaks to the validity or invalidity of an "instrument" or "document." Nothing in the language supports a contention that Fees may rely on the favorable portions of the assignment by Page, Jr., but reject as invalid the unfavorable portions on the basis that the instrument was not recorded. Ordinarily, a grantee cannot claim under an instrument without confirming it. *See Cowell v. Springs Co.*, 100 U.S. 55, 25 L.Ed. 547 (1879); *City National Bank v. City of Bridgeport*, 109 Conn. 529, 147 A. 181 (1929); *Ambarann Corp. v. Old Ben Coal Corp.*, 395 Ill. 154, 69 N.E.2d 835 (1946); *Newcomb v. Chapman*, 344 P.2d 1058 (Okl.1959).

■ Failure to record does not affect the validity of a conveyance as between the parties "and such as have notice thereof." Section 38–35–109, C.R.S.1973. The long–standing rule that a party is bound by recitals in instruments of transfer in his chain of title [10] suggests that the Colorado recording act be construed to include Fees as a party having notice of the reservation of Page, Jr.'s overriding royalty interest. We so

construe that act. Thus, Fees is excluded from protection against that overriding royalty by the express language of the recording act.

## IV.

■ Another dimension is added to the present case by the fact that interests in a federal oil and gas lease are the subjects of all the transfers. Independent records of transfers of interests in federal oil and gas leases are maintained in the offices of the United States Department of the Interior, Bureau of Land Management. *See generally* 2 *Law of Federal Oil and Gas Leases* § 24.2 (Rocky Mtn.Min.L.Foundation 1979); Files, *Recording of Instruments Affecting Oil and Gas Interests in Federal Lands*, 3 Rocky Mtn.Min.L.Inst. 553 (1957). From the county records Fees had no information to determine whether its assignor, Shawnee, had any interest in the lease. The BLM records provided a ready source of possible information with respect to title history and status of the lease. *See id.* Under the facts of this case it is only reasonable to hold Fees to a duty of inquiry as to the matters reflected in those records and to hold it to be on notice of all matters which such inquiry would have disclosed. *See Jaramillo v. McLoy*, 263 F.Supp. 870 (D.Colo.1967); *Foster v. Cramer*, 19 Colo. 405, 35 P. 747 (1894); *see generally Winkler v. Andrus*, 614 F.2d 707 (10th Cir. 1980). In this case the complete chain of title, including the reservation of Page, Jr.'s overriding royalty interest, appeared in the BLM records.[11] Thus, Fees was on inquiry notice of Page, Jr.'s overriding royalty interest when Fees acquired the working interest.[12] Un-

---

**10.** As noted earlier, a curative statute, not applicable here, limits the circumstances in which such recitals are effective to give notice. *See* n. 6, *supra.*

**11.** The assignment by which Shawnee, Fees' immediate assignor, acquired title contained a general reference to "outstanding overriding royalties" and stated that Shawnee agreed to assume them. Inquiry of Shawnee should have disclosed the terms of the instrument by which it acquired its interest. Knowledge of those terms would have suggested an inquiry as to

the existence of outstanding overriding royalty interests.

**12.** *Bolack v. Underwood*, 340 F.2d 816 (10th Cir. 1965), and *Dame v. Mileski*, 80 Wyo. 156, 340 P.2d 205 (1959), are not to the contrary. In *Dame v. Mileski* the *county records* disclosed apparent title to an overriding royalty interest in an oil and gas lease to be in McDonald. Conflicting assignments of that overriding royalty interest by McDonald to Dame and by McDonald to Anderson appeared in the BLM records. Mileski took yet another assignment

der these circumstances, even if Fees would not otherwise be held to be on notice of instruments of transfer in his chain of title, Fees would be considered to have inquiry notice of Page, Jr.'s interest and would not be protected by the recording act.

## V.

Fees contends that, even if its arguments based on the recording act are not accepted, Page, Jr., cannot prevail because the overriding royalty interest was extinguished by merger. Fees argues that the transfer from Phillips to Page, Jr., was a sublease, not an assignment;[13] that Page, Jr.'s overriding royalty interest was reserved out of the sublease; and that, when the sublessee's interest and the sublessor's interest became united in Shawnee by mesne conveyances, the interests merged, thus extinguishing the sublease and, with it, Page, Jr.'s overriding royalty interest.

■ Generally, the life of an overriding royalty interest is limited by the duration of the lease or other interest from which it was created. *See* 2 Williams & Meyers, *Oil and Gas Law* § 418.2 (1977); 6 *Oil and Gas Reporter* 368 (1956). Extinguishment of an overriding royalty interest on termination of the sublease from which it was created

has been recognized upon expiration of the sublease by its own terms, *Wier v. Glassell*, 216 La. 828, 44 So.2d 882 (1950), and by surrender of a sublease on inability of the sublessee to satisfy the drilling obligation imposed in the sublease. *La Laguna Ranch Co. v. Dodge*, 18 Cal.2d 132, 114 P.2d 351 (1941).

■ In this case Shawnee acquired the interests of both the sublessor and the sublessee. That portion of the sublessee's interest previously held by Page, Sr., was acquired by Shawnee by an assignment which was expressly made subject to all outstanding overriding royalties, "which shall be assumed by Shawnee." Neither Page, Jr.'s overriding royalty interest nor any other was specifically described. The intent is clear that all outstanding overriding royalties[14] were to remain in effect and were to be assumed by Shawnee. Application of the doctrine of merger to defeat an overriding royalty interest contrary to the intent of the holders of the interests of the sublessor and sublessee as expressed in the document by which both such interests came together in one owner would be inequitable; neither policy nor precedent requires such a result.[15] The overriding roy-

---

of that overriding royalty interest from McDonald. Mileski was held not to be on constructive notice of the assignments to Dame and Anderson appearing in the BLM records. Thus Mileski validly could rely on the apparent title in McDonald as reflected by the county records. *Bolack v. Underwood, supra*, is to like effect. In the instant case, inquiry is required because the county records yield no indication that Shawnee had any interest in the lease, i. e., no reasonable reliance could be founded upon the status of title as it appeared in the county records.

**13.** The document by which Page, Jr., acquired his interest reserved substantial rights and controls to Phillips, the transferor. This is indicative of a sublease rather than an assignment. *See Gordon Investment Co. v. Jones*, 123 Colo. 253, 227 P.2d 336 (1951) (not involving an oil and gas lease); 2 Williams & Meyers, *Oil and Gas Law* § 412 (1977). *But see* 2 Williams & Meyers, *Oil and Gas Law* § 414 (1977), for a strongly expressed view that the sublease–assignment distinction should not be imported into oil and gas law. The trial court concluded that the transfer document was a sublease.

For the purpose of this discussion, the transfer from Phillips to Page, Jr., will be assumed to be a sublease, the only characterization which would support Fees' argument that Page, Jr.'s overriding royalty interest was extinguished by merger. It is not necessary to resolve whether the sublease–assignment distinction should be adopted in Colorado, for, as will be shown, Fees cannot prevail even under the characterization most favorable to it.

**14.** The language of assumption is not limited to identified overriding royalty interests or even to those of which Shawnee was aware. The trial court found that Shawnee did not have actual knowledge of Page, Jr.'s overriding royalty interest when it acquired that portion of the working interests from which such overriding royalty interest had been reserved.

**15.** Shawnee and its successors cannot claim the benefits of the assignment while rejecting its burdens. *See Newcomb v. Chapman, supra* (stating this principle in dictum); *cf.* 2 Williams & Meyers, *Oil and Gas Law* § 428 (1977) (use of contractual provisions between owner of work-

alty interest of Page, Jr., was not extinguished by merger.

The judgment of the court of appeals is reversed, and this case is remanded to the court of appeals for reinstatement of the judgment of the trial court.

HODGES, C. J., and LEE and ROVIRA, JJ., dissent.

ing interest and owner of overriding royalty interest to protect the overriding royalty interest against extinguishment caused by termination of the lease). With respect to questions concerning termination of overriding royalty interests by merger of the lessor's interest and the working interest from which the overriding royalty was carved, *see generally* Warren, *Transfer of the Oil and Gas Lessee's Interest*, 34 Tex.L.Rev. 386, 412 (1956), 30 Cal.L.Rev. 200 (1942) (case note on *La Laguna Ranch Co. v. Dodge, supra*).

APPENDIX A

United States of America

1 Oil and
  Gas Lease

Maroney

2 Assign-
  ment (All)

Phillips

3 Sublease
  or
  Assignment
  (Undivided
   One-Half)

Page, Jr.

4 Assignment          Reserving
  (Undivided          Two Percent
   One-Half)          Overriding
                      Royalty

Page, Sr.

5 Assignment
  (Undivided
   One-Eighth)

Beardmore

6 Assignment          7 Assignment
  (Undivided            (Undivided
   One-Half)             One-Half)

Shawnee                Shawnee

8 Assignment

Fees

ROVIRA, Justice, dissenting:

I respectfully dissent. The majority opinion is based on the propositions that (1) unless otherwise provided by statute, a purchaser is bound by recitals in conveyances or other instruments of transfer in his chain of title regardless of whether the instrument is recorded; (2) the policies and language of the Colorado recording act dictate no different result; and (3) Fees was placed on inquiry notice as to the information contained in the records of the Bureau of Land Management located in Denver.

My analysis leads to a different conclusion and necessitates starting with the Colorado recording act and reaching the question, argued by the parties and decided by the court of appeals, which the majority finds it unnecessary to resolve, whether the Colorado recording act is a "race–notice" or a "pure notice" statute.

I also disagree that Fees is under a duty of inquiry as to matters reflected in the Bureau of Land Management records.

### I.

In his petition for certiorari Page, Jr., argued that:

1.  the Colorado recording statute is not applicable as between interests to real property within a single chain of title;

2.  the Colorado recording statute should be construed as a "race–notice" rather than as a "pure notice" recording statute;

3.  because his reservation of the 2% overriding royalty had been filed in the office of the Bureau of Land Management, and because Fees' duty of inquiry as to its assignor's title to the oil and gas lease included the duty to examine the Bureau's records, Fees is chargeable with "inquiry" notice of the reservation of the royalty.

Page, Jr., characterized the action to quiet title to the 2% overriding royalty as "an attempt by a grantee [Fees] to repudiate a reservation by a remote grantor [Page, Jr.] in an assignment necessary to the grantee's title." On the basis of this characterization, he argued that the Colorado recording statute does not apply to the facts of this case, contending, in effect, that the statute is not applicable as between interests to real property within a single chain of title. The majority opinion has accepted this analysis.

The Colorado recording statute, section 38–35–109, C.R.S.1973, provides as follows:

> "*All* deeds, powers of attorney, agreements, or other *instruments in writing* conveying, encumbering, or affecting the title to real property, certificates, and certified copies of orders, judgments, and decrees of courts of record *may be recorded* in the office of the county clerk and recorder of the county where such real property is situated and *no such instrument or document shall be valid* as against *any* class of persons with any kind of rights, *except between the parties thereto and such as have notice thereof*, until the same is deposited with such county clerk and recorder. In all cases where by law an instrument may be filed, the filing thereof with such county clerk and recorder shall be equivalent to the recording thereof." (Emphasis added.)

The statute governs the validity of "instruments in writing . . . affecting the title to real property." This phrase is clearly broad enough to encompass instruments which fall both within and without the chain of title of the party for whose protection the recording statute is intended, *i. e.,* the person "with any kind of rights" to real property who takes his interest without actual or constructive notice of, and who is not a party to, such an instrument. An instrument within the scope of the statute is not valid against a protected party "until the same is deposited with . . . [the] county clerk and recorder." The plain language of the statute thus: (a) makes its provisions applicable to the document in which Page, Jr., reserved the 2% overriding royalty; and (b) renders the reservation in that unrecorded document ineffective as against Fees, who was not a party to the document and who had neither actual nor constructive notice of its contents.

Recording statutes should be liberally construed to promote their underlying purposes, one of which is the enhancement of the extent to which a transferee of an interest in real property may rely on the state of record title as it appears at the time of the conveyance to him. *See* 1 *R. Patton & C. Patton, Patton on Land Titles* § 6 (1957); 8 *C. Thompson, Commentaries on the Law of Real Property* § 4291 (1963 Repl.Vol.). Indeed, section 38–34–101, C.R.S.1973, specifically requires that we construe the Colorado recording statute liberally. It provides:

"It is the purpose and intention of articles 34, 35, 40, and part 1 of article 41 of this title to render titles to real property and every interest therein more secure and marketable, and it is declared to be the policy in this state that this article and all other laws concerning or affecting title to real property and every interest therein and all recorded instruments, decrees, and orders of courts of record, including all proceedings in the suits or causes wherein such orders or decrees have been entered or rendered, shall be liberally construed with the end in view of rendering such titles absolute and free from technical defects so that subsequent purchasers and encumbrancers by way of mortgage, judgment, or otherwise, may rely on the record title and so that the record title of the party in possession is sustained and not defeated by technical or strict constructions."

In my opinion, application of the statute to instruments both within and without the chain of title of the party who claims its protection serves this legislative mandate, giving effect to the express language used by the General Assembly in section 38–35–109.

In support of its position that the recording statute is inoperative within a single chain of title to real property and that a grantee cannot claim under an instrument without confirming it, the majority cites the following authorities: *Cowell v. Springs Company*, 100 U.S. 55, 25 L.Ed. 547 (1869); *City National Bank v. City of Bridgeport*, 109 Conn. 529, 147 A. 181 (1929); *Ambarann Corp. v. Old Ben Coal Corp.*, 395 Ill. 154, 69 N.E.2d 835 (1946); *Newcomb v. Chapman*, 344 P.2d 1058 (Okl.1959). These cases, however, establish three narrower principles, none of which control the applicability of the statute to the facts of this case.

The first of these principles is that a grantee is estopped to deny the validity of the recitals in or provisions of the instrument which he takes from his immediate grantor. *Cowell v. Springs Company, supra; City National Bank, supra.* Accord, *Dixon v. Abrams*, 145 Colo. 86, 357 ⸏ 2d 917 (1961). Fees does not seek to deny the validity of any part of the document through which Shawnee assigned the lease to Fees. Therefore, this principle has no effect in the context of this case.

The second principle is that a remote grantee is similarly estopped to deny the validity of the recitals in or provisions of a deed from his remote grantor, *after that deed has been recorded. Ambarann Corp. v. Old Ben Coal Corp., supra.* Contra, *Carter v. Thompson*, 167 Ark. 272, 267 S.W. 790 (1925). Because the document in which Page, Jr., reserved the 2% overriding royalty had not been placed of record when Fees, a remote grantee with respect to Page, Jr., took title to the undivided one–half interest in the working and operating rights under the lease, this principle does not apply to the facts of this case.

The third principle established by the cited authorities is that a remote grantee may not adopt inconsistent positions with respect to his remote grantor's title to an interest in real property, relying on the validity of that title to support his own claim, while at the same time seeking to deny that title with respect to an opposing claim. *Newcomb v. Chapman, supra.* Because Fees does not seek to deny that Page, Jr., held good title to an undivided one–half interest in the working and operating rights under the lease, as of the April 1960 conveyance to Page, Sr., this third principle is inapplicable to this case.

The position taken by the majority opinion is inconsistent with both the plain language of the Colorado recording statute and the underlying purpose of the statute, *viz.*, enhancement of the extent to which a transferee of an interest in real property may rely on record title as it exists at the time of the conveyance to him.[1] Therefore, I would reject the conclusion that Fees may not rely on the Colorado recording statute to quiet title to the 2% overriding royalty simply because that royalty was reserved by Page, Jr., in an unrecorded document which forms a remote link 'in Fees' chain of title.

## II.

The majority having concluded that Fees is charged with notice of, and bound by the reservation of the overriding royalty has not found it necessary to determine whether the Colorado recording act is a "race–notice" or a "pure notice" statute.

Since I differ with the majority on this basic issue, I think it necessary, in order to complete the analysis, to state my views on this question.

■ Page, Jr., contends that section 38–35–109 should be construed as a "race–notice" recording statute, pursuant to which a transferee of an interest in real property can prevail over a prior conflicting interest in that property only if he takes without notice of the prior interest *and* secures priority of record as against that interest. I disagree with this construction of the statute. Section 38–35–109 is most appropriately characterized as a "pure notice" recording statute, pursuant to which the subsequent transferee, in order to prevail over the prior interest, must take without notice but need *not* secure priority of record as against that interest.

The court of appeals was correct in stating that *Eastwood v. Shedd*, 166 Colo. 136, 442 P.2d 423 (1968), has no binding precedential effect on our decision in the instant case. In *Eastwood*, this court characterized the Colorado recording statute as a "race–notice" statute. However, that characterization was wholly unnecessary to the decision in *Eastwood* and, as *obiter dictum*, is not controlling here.[2] *Parker v. Plympton*, 85 Colo. 87, 273 P. 1030 (1929); *Young v. People*, 54 Colo. 293, 130 P. 1011 (1913). *See also Note, The Colorado Recording Act: Race–Notice or Pure Notice?* 51 Den.L.J. 115, 118–120 (1974). Therefore, I treat the issue of the proper construction of the Colorado recording statute as one of first impression in this state.

Because the Colorado recording statute does not explicitly require that the transferee of real property secure priority of record as against a prior transferee, it more closely resembles the prototypical "pure notice" statute than the prototypical "race–notice" statute. 4 *American Law of Property* § 17.5 (A. J. Casner ed. 1952). In addition, the wording of section 38–35–109 is that of the typical "pure notice" statute, rather than that of the typical "race–notice" statute. *Compare Mass.Gen.Laws Ann.* ch. 183, § 4 (West) (a "pure notice" statute) *with Mich.Stat.Ann.* § 26.547 (a "race–notice" statute). *See* 1 *R. Patton & C. Patton, Patton on Land Titles* § 9 (1957).

As noted in Part I of this dissent, section 38–34–101, C.R.S.1973, requires us to construe the Colorado recording statute liberally in order to "render title to real property and every interest therein more secure and marketable." Characterization of section 38–35–109 as a "pure notice" recording statute best serves this legislative policy. The "pure notice" construction tends toward security and marketability of titles,

---

1. The Appellate Division of the New York Supreme Court has rejected Page, Jr.'s argument, holding the New York recording statute fully applicable to documents within the chain of title of the transferee who claims the protection of the statute. *Ebling Brewing Co. v. Gennaro*, 189 App.Div. 782, 179 N.Y.S. 384 (1919).

2. In *Plew v. Colorado Lumber Products*, 28 Colo.App. 557, 481 P.2d 127 (1970), the court of appeals relied on *Eastwood, supra*, and implicitly dealt with the Colorado recording statute as a "race–notice" statute. As is the case with *Eastwood*, however, *Plew* was without binding precedential effect on the opinion of the court of appeals in the case before us.

because it enables a transferee of an interest in real property, when he evaluates the validity of that interest with respect to possible prior transfers, to rely on record title as it exists at the time of the conveyance to him, without regard to the possibility of subsequent recording of a prior transfer. On balance, a "pure notice" statute provides the greater · incentive toward prompt recording of documents of conveyance, enhancing the completeness of title records and, hence, the security and marketability of title to real property. *See Note, supra*, 51 Den.L.J. at 122–123.

In addition, the "pure notice" construction recognizes the equities which exist between: (a) a transferee of an interest in real property who takes without notice of a prior unrecorded transfer; and (b) the prior transferee who has failed to promptly record his interest, "negligently . . . [leaving] the way open for his grantor to convey to another who has no notice." 1 *R. Patton, supra*, at § 19.

For these reasons, I would affirm the construction of section 38–35–109 as a "pure notice" recording statute. Because Fees took title to the oil and gas lease without notice of the reserved 2% overriding royalty, it was entitled to prevail as against Page, Jr., in the action to quiet title to that royalty.

### III.

The majority opinion holds that Fees was on "inquiry" notice of Page, Jr.'s 2% overriding royalty and would not be protected by the recording act because: (a) the document in which the reservation was made had been filed with the Bureau of Land Management at the time of the assignment to Fees; and (b) that filing constituted a circumstance sufficient to trigger a duty of inquiry by Fees because the county records were insufficient. I disagree. The court of appeals correctly concluded that the filing in the office of the Bureau of Land Management was not sufficient, in the circumstances of this case, to serve as the basis for the imputation to Fees of constructive, or "inquiry," notice of the reservation of the

2% overriding royalty. *Bolack v. Underwood*, 340 F.2d 816 (10th Cir. 1965); *Dame v. Mileski*, 80 Wyo. 156, 340 P.2d 205 (1959). *See Cohen v. Thomas & Son Transfer Line Inc.*, 196 Colo. 386, 586 P.2d 39 (1978). *See generally* 4 *American Law of Property* §§ 17.11–17.16 (A. J. Casner ed. 1952); 1 *R. Patton & C. Patton, Patton on Land Titles* § 14 (1957).

I would affirm the judgment of the court of appeals.

Chief Justice HODGES and Justice LEE join me in this dissent.